UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HOWARD T. LINDEN, as
personal representative of the
estate of Omarion Humphrey,

Case No. 2:17-cv-14155

HONORABLE STEPHEN J. MURPHY, III

Plaintiff,

v.

BRADLEY DIXON, et al.,

Defendants.
                                          /

**OPINION AND ORDER DENYING
DEFENDANTS' MOTION TO DISMISS [36]**

On December 26, 2017, Plaintiff Howard T. Linden filed his complaint alleging that one set of defendants[1] demonstrated unconstitutional deliberate indifference towards Omarion Humphry—the decedent whose estate Plaintiff represents. ECF 1. On July 3, 2018, Plaintiff filed suit against the "State Defendants."[2] ECF 22. On July 10, 2018, the undersigned accepted reassignment of the later-filed case. ECF 24. On August 7, 2018, the Court consolidated the cases. ECF 20.

On November 16, 2018, State Defendants filed a motion to dismiss. ECF 36. The Court has reviewed the briefs and finds that a hearing is unnecessary. E.D. Mich. LR 7.1(f). For the reasons below, the Court will deny the motion.

---

[1] Bradley Dixon, Geneva Harvey, Kristen Nolen-Winfield, and Lasenette "Lulu" Richardson.

[2] Defendants Kristen Field, Susan Hull, Ebony Jeffries, Alisia Johnson, Lonia Perry, Christine Rehagan, Linda Tansil, Janice Tribble, and Alisia Wiggins.

1

## BACKGROUND

Decedent Omarion Humphrey was a nine-year old boy suffering from non-verbal autism requiring special services and supervision. ECF 22, PgID 291. State Defendants worked in various capacities for the Michigan Department of Health and Human Services. *Id.* at 289–91. State Defendants worked to have Humphrey removed from his home and coordinated with Alternatives for Children and Families to place Humphrey with a foster parent, Lasenette "Lulu" Richardson. *Id.* at 291–93. Richardson struggled to care for Humphrey, lacked the appropriate license to care for Humphrey's autism needs, and wished to surrender her license. *Id.* at 293–95.

On July 4, 2015, while attending a Fourth of July Party with Richardson and others at Lake Callis Recreation Complex in Davison, Michigan, Humphrey wandered away from the group. *Id.* at 295. About one hour later, park staff found Humphrey and returned him to Richardson. *Id.* Humphrey, again, wandered off. *Id.* This time, he was not found until six days later—he had drowned in Lake Callis. *Id.*

## STANDARD OF REVIEW

When analyzing a motion to dismiss under Rule 12(b)(6), the Court views the complaint in the light most favorable to the plaintiff, presumes the truth of all well-pleaded factual allegations, and draws every reasonable inference in favor of the non-moving party. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). To survive a motion to dismiss, "the complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Nat'l Hockey League Players Ass'n v. Plymouth*

*Whalers Hockey Club*, 419 F.3d 462, 468 (6th Cir. 2005) (citation omitted). Plaintiff must allege facts "sufficient 'to raise a right to relief above the speculative level,' and to 'state a claim to relief that is plausible on its face.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). If "a cause of action fails as a matter of law, regardless of whether the plaintiff's factual allegations are true," then the Court must dismiss it. *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1005 (6th Cir. 2009).

## DISCUSSION

State Defendants contend that Plaintiff's causation theory has an "evidentiary gap between [the] asserted cause and the injury" that renders the cause conjectural and bars recovery. ECF 36, PgID 362. Particularly, State Defendants argue that "the intractable problem with Plaintiff's theory is his affirmative acknowledgment of a six-day evidentiary gap between Richardson's failure to provide appropriate care and supervision and the discovery of Humphrey's body." *Id.* at 379–80.

Defendant points to the following paragraphs from Plaintiff's complaint to show the evidentiary gap:

> 48. An hour or so later [on July 4, 2015], while Richardson was enjoying her family Fourth of July party at the park, [Humphrey] again wandered off and went missing.
> 49. [Humphrey] was not found until six days later, when his lifeless body was retrieved from the bottom of Lake Callis. [Humphrey's] cause of death was drowning.

ECF 22, PgID 295; *see also* ECF 36, PgID 372 (citing the complaint). Defendants conclude that Plaintiff therefore "plead[ed] that there was a six-day evidentiary gap

3

between Richardson's failure to provide care and supervision and the discovery of Humphrey's body in Lake Callis." ECF 36, PgID 372.

But State Defendants argument is unpersuasive for several reasons. First, Plaintiff does not plead that Humphrey *drowned* on the day he was found.[3] State Defendants' argument conflates Humphrey's drowning with the discovery of his body. The pleadings do not state the date on which Humphrey drowned. But to draw a negative inference against Plaintiff would invert the Rule 12(b)(6) standard.

Second, even if Humphrey drowned on the day his body was found, there is not an evidentiary gap sufficient to justify dismissal of the case. Plaintiff presents the following causation theory:

> Had Decedent been properly supervised by his foster parent, Decedent would not have entered the lake and would not have drowned. Had the State Defendants refrained from placing Decedent into Richardson's foster home, or at least removed Decedent from Richardson's foster home prior to July 4th [sic], 2015, Decedent would not have been wandering around Lake Callis unsupervised, would not have entered the lake unsupervised, and thus would not have drowned.

ECF 38, PgID 389. Under that theory, it was State Defendant's placement (and non-removal) of Humphrey in Richardson's care and Richardson's lack of supervision that resulted in Humphrey's death. Regardless of whether Humphrey drowned on July 4 or some other day before his body was found, according to Plaintiff his drowning resulted from Richardson's lack of supervision and Humphrey's ability to wander near Lake Callis unattended.

---

[3] Plaintiff contends otherwise. *See* ECF 38, PgID 389 ("Plaintiff alleges that Decedent drowned *that* day [i.e. July 4, 2015]."). But Plaintiff's complaint does not allege the exact date of Humphrey's death.

4

Third, State Defendants' cases are not applicable. Two cases address the *manner* in which a party died. *See Chicago, Milwaukee & St. Paul Ry. Co. v. Coogan*, 271 U.S. 472, 478 (1926) (noting that an alternative explanation for the claimant's death was "quite as consistent with the evidence" as the claimant's proposed theory); *Howe v. Mich. Cent. R.R. Co.*, 236 Mich. 577, 583 (1926) (finding more than "one possible explanation of the manner decedent came to his death"). Three other cases address possible causes of death. *See Jordan v. Whiting Co.*, 396 Mich. 145, 150–51 (1976) (noting the conjectural nature of whether the decedent died because a crane on which he was working was not grounded); *Skinner v. Square D Co.*, 445 Mich. 153, 172 (1994) (commenting that there were "countless" possible "equally as probable" causation theories); *Teal v. Prasad*, 283 Mich. App. 384 (2009) (considering a hospital's liability when the hospital discharged a patient and the patient committed suicide eight days later). Here, Plaintiff alleges that Humphrey drowned. And at the motion-to-dismiss stage, State Defendants cannot contend otherwise. Thus, Humphrey's cause of death—i.e. drowning—is not in dispute and cases discussing various manners of death or competing causes of death are not applicable.

Fourth, State Defendants' argument about others' ability to supervise Humphrey is unavailing. State Defendants maintain that "there are any number of equally plausible explanations for Humphrey's drowning that could entail him playing safely in Lake Callis while being supervised by any number of people." ECF 36, PgID 381. But Plaintiff's complaint does not allege that Humphrey drowned while receiving adequate supervision. Nor does it allege facts from which the Court could

5

draw that reasonable inference. And, even if the Court could draw the inference, it may not draw inferences against the Plaintiff at the motion-to-dismiss stage. Moreover, other revelers at the park did not owe Humphrey a legal obligation to supervise him as Richardson did.

**ORDER**

**WHEREFORE**, it is hereby **ORDERED** that Defendants' motion to dismiss [36] is **DENIED**.

**IT IS FURTHER ORDERED** that State Defendants shall **FILE** an answer to Plaintiff's complaint no later than **April 25, 2019.**

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: April 4, 2019

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on April 4, 2019, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager