UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HOWARD T. LINDEN, as
personal representative of the
estate of Omarion Humphrey,

    Plaintiff,

v.

BRADLEY DIXON, et al.,

    Defendants.

_____/

Case No. 2:17-cv-14155

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [73]**

Plaintiff alleged that Defendants Kristen Field, Susan Hull, Ebony Jeffries, Alisia Johnson, Lonia Perry, Christine Rehagan, Linda Tansil, Janice Tribble, and Alisia Wiggins ("State Defendants") demonstrated unconstitutional deliberate indifference towards Omarion Humphrey ("Decedent")—whose estate Plaintiff represents. ECF 22. Pending is State Defendants' motion for summary judgment. ECF 73. The Court reviewed the briefs and concludes that a hearing is unnecessary. *See* E.D. Mich. L.R. 7.1(f). For the following reasons, the Court will grant in part and deny in part the motion.

**BACKGROUND**

Decedent was a nine-year-old boy who suffered from non-verbal autism and required special services and supervision. ECF 22, PgID 291. State Defendants worked for the State of Michigan Department of Health and Human Services

("MDHHS") during the relevant time period. *Id*. at 289–91. Before Decedent's death, Defendant Field, a Child Protective Services ("CPS") Placement Worker, petitioned the Oakland County Circuit Court and requested that Decedent and his siblings be removed from his family's home. *See* ECF 79-3. The state court granted Defendant Field's petition and placed Decedent and his siblings with the MDHHS "for care and supervision." ECF 79-1, PgID 1254. After Decedent was removed, MDHHS completed an "initial placement request/ notification" for him. ECF 73-15. The notification specifically noted that he was "[a]utistic and non-verbal." ECF 73-15.

Decedent and eight of his nine siblings were placed in foster homes through private placement agencies. Decedent was placed by Alternatives for Children & Families, Inc. ("ACF"). ECF 73-10, PgID 953; ECF 73-11, PgID 1069 (Defendant Field testifying Decedent "was placed into the [ACF] foster home the same day" the court removed him). During this time, Defendant Johnson became the "purchase of service monitor" assigned to Decedent's case. ECF 80-4, PgID 1658. As such, Defendant Johnson "monitored the private agencies to ensure" that they were "adhering to policies in regard to case management for the children that they were assigned." *Id*. at 1659. ACF then placed Decedent in Defendant Lasenette Richardson's foster home. Defendant Johnson testified that she did not recall speaking with Defendant Richardson. ECF 73-18, PgID 1122. She did, however, talk to Defendant Field about Decedent's case. *Id*. Defendant Johnson also testified that she had nothing to do with placing Decedent in Defendant Richardson's home. *Id*.

2

Contrary to Defendant Johnson's testimony, Defendant Richardson—the foster parent—testified that she spoke with Defendant Johnson soon after ACF placed Decedent in her care. ECF 79-8, PgID 1341. Defendant Richardson testified that she had expressed her inability "to provide the heightened care and supervision that [Decedent] required" and that she "even expressed [a] desire to surrender [her] foster home license and cease providing foster care services." *Id*. Her hesitation was based on, in part, Decedent's "habit and tendency to wander away." *Id*. But Defendant Richardson later testified that she bonded with Decedent and that she was looking forward to adopting him. *Id*. at 1369. Defendant Richardson also asked Defendant Johnson to "increase [Decedent's] level of care" so she could receive more money to provide for him. *Id*. at 1359; 73-18, PgID 1126.

Decedent's case was then reassigned from Defendant Johnson to Defendant Jeffries, another service monitor. ECF 73-19, PgID 1137. But Defendant Jeffries testified that she did not communicate with Defendant Richardson, and that she knew nothing about Defendant Richardson before her assignment to the case. *Id*. at 1141–42, 1155. In fact, Defendant Jeffries "was not aware of any safety concerns" while she was assigned Decedent's case. *Id*. at 1158.

Within days of Defendant Jeffries taking over Decedent's case, Defendant Richardson took Decedent to a Fourth of July party, where he wandered off, drowned, and was found dead several days later. ECF 79-8, PgID 1342. Then, in December 2015, Plaintiff filed a state-court action against ACF and Richardson. ECF 14, PgID 114–15. ACF moved for summary disposition; and the state court granted the motion

3

and dismissed ACF with prejudice. ECF 14-4, PgID 150. In December 2017, Plaintiff filed a complaint against ACF and Defendant Richardson before the Court. ECF 1. And in July 2018, Plaintiff filed a complaint against State Defendants. ECF 22. The Court granted ACF's motion for summary judgment. ECF 34. The Court will now address State Defendants' pending summary judgment motion. ECF 73.

## LEGAL STANDARD

Summary judgment is proper if the movant shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material for purposes of summary judgment if its resolution would establish or refute an "essential element[] of a cause of action or defense asserted by the parties[.]" *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quotation omitted).

The Court must view the facts and draw all inferences in the light most favorable to the non-moving party. *Stiles ex rel. D.S. v. Grainger Cnty.*, 819 F.3d 834, 848 (6th Cir. 2016) (citation omitted). The Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). And although the Court may not make credibility judgments or weigh the evidence, *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015), a mere "scintilla" of evidence is insufficient to survive summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff," *Anderson*, 477 U.S. at 252.

4

## DISCUSSION

The complaint alleged that the State Defendants—"in both their individual and official capacities"—were deliberately indifferent to Decedent and thus violated his civil rights. *See* ECF 22, PgID 289, 296–300. State Defendants now argue that the case should be dismissed because they are entitled to qualified immunity and that Defendant Field is entitled to absolute immunity. The Court will first address the absolute immunity claim and then it will address the qualified immunity claim.

I.  Absolute Immunity

Plaintiff claims that Defendant Field was deliberately indifferent to Decedent based on actions in petitioning the Oakland County Circuit Court and requesting "Decedent be removed from his family home and [placed] into the jurisdiction, custody, and care of the State of Michigan DHS." ECF 22, PgID 291. But family service workers are absolutely immune from liability for conduct relating to "testimony or recommendations given in court concerning the child's best interest as" the individual "saw the matter." *Pittman v. Cuyahoga Cnty. Dept. of Children and Family Serv's*, 640 F.3d 716, 725 (6th Cir. 2011) (quotations omitted). Family service workers like Defendant Field are also immune from claims relating to any potentially false or incorrect information given during a removal proceeding. *Id*. at 726. Thus, Defendant Field is entitled to absolute immunity for any statements made during the removal proceedings. The Court will address the remaining claims against Defendant Field in the next section about qualified immunity.

5

II. <u>Qualified Immunity</u>

The Court will now address whether Defendants are entitled to qualified immunity.

   A. *Official Capacity Claims*

The Court will first grant summary judgment on Plaintiff's official capacity claims because Plaintiff cannot "seek damages or any other retroactive relief against" state employees in their official capacities under federal law. *Kanuszewski v. Mich. Dep't of Health and Human Serv's*, 927 F.3d 396, 417 (6th Cir. 2019).

   B. *Individual Capacity Claims*

State officials or employees sued in their individual capacities for monetary damages are sometimes entitled to qualified immunity. Qualified immunity is "an immunity from suit rather than a mere defense to liability[.]" *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). A qualified immunity analysis requires a two-pronged inquiry. First, the Court must consider whether the facts, "when taken in the light most favorable to the party asserting the injury, show the [defendant's] conduct violated a constitutional right[.]" *Mullins v. Cyranek*, 805 F.3d 760, 765 (6th Cir. 2015) (quoting *Saucier v. Katz*, 533 U.S. 194, 201–02 (2001)). Second, the Court must determine whether the right was "clearly established such 'that a reasonable official would understand that what he is doing violates that right.'" *Id.* (quoting *Saucier*, 533 U.S. at 201–02).

The Court may use its discretion to determine which prong to analyze first. *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). Ultimately, "[p]laintiff bears

6

the burden of showing that defendants are not entitled to qualified immunity." *Maben v. Thelen*, 887 F.3d 252, 269 (6th Cir. 2018) (citing *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009)). But "courts 'should not grant summary judgment on the issue of qualified immunity if there exists a genuine issue of material fact, involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights.'" *Jones v. Clark Cnty., Ky.*, 959 F.3d 748, 765 (6th Cir. 2020) (quoting *Flint ex rel. Flint v. Ky. Dept. of Corr.*, 270 F.3d 340, 346 (6th Cir. 2011)).

Defendants argue that they are entitled to qualified immunity because they did not violate Decedent's constitutional rights, and even if they did, those rights were not clearly established. ECF 73, PgID 846. The Court will address each issue in turn.

1. *Constitutional Violation*

The Court must first determine whether Defendants were deliberately indifferent and thus violated Decedent's Fourteenth Amendment substantive due process rights. The Sixth Circuit is clear that children in foster care have a constitutional "right to be free from the infliction of unnecessary harm . . . [while] in state-regulated foster homes." *Meador v. Cabinet for Human Res.*, 902 F.2d 474, 476 (6th Cir. 1990). Moreover, "a substantive due process claim is actionable where a plaintiff sufficiently alleges 'that the deliberate indifference of the state officials *in placing* the child in a foster home resulted in a violation of a constitutionally protected liberty interest to be free from the infliction of unnecessary pain.'" *Lethbridge v. Forrest*, No. 08-11423, 2010 WL 1417778, at *6 (E.D. Mich. Apr. 5, 2010) (emphasis

7

in original) (quoting *Meador*, 902 F.2d at 476). Finally, "the state's role in placing children in foster homes" is analogous "to the mental institution and prison settings in which state liability has been clearly established for deliberate indifference to the plight of the individuals in detention." *Lintz v. Skipski*, 25 F.3d 304, 305 (6th Cir. 1994). And to prove deliberate indifference, Plaintiff "must show that the alleged mistreatment was 'objectively' serious and that the defendants 'subjectively' ignored the" child's "safety need." *Clark-Murphy v. Foreback*, 439 F.3d 280, 286 (6th Cir. 2006); *see also Brown v. Hatch*, 984 F. Supp. 2d 700, 711 (E.D. Mich. 2013) (applying the same test in the foster home setting).

Here, Plaintiff claims that Defendants Field, Hull, Jeffries, and Johnson violated Decedent's rights by failing to properly supervise and care for him, and that Defendants Perry, Rehagan, Tansil, Tribble, and Wiggins violated Decedent's rights by licensing ACF and Richardson's foster home. ECF 22, PgID 298–300. The Court will address the two groups of Defendants separately, starting with the subjective component of the deliberate indifference analysis. Then, it will address the objective component as necessary.

### a. Subjective component

To satisfy the subjective component Plaintiff must prove that "[D]efendants 'subjectively' ignored the" child's "safety need." *Clark-Murphy*, 439 F.3d at 286.

#### i. Defendants Field, Hull, Jeffries, and Johnson

Plaintiff claims Defendants Field, Hull, Jeffries, and Johnson violated Decedent's constitutional rights by placing him in a foster home that was unable to

8

care for him. ECF 22, PgID 297–98; ECF 78, PgID 1239–44. But for a deliberate indifference claim Plaintiff must prove "that the defendant knew of and disregarded a substantial risk of serious harm to [the children's] health and safety." *Watkins v. City of Battle Creek*, 273 F.3d 682, 685–86 (6th Cir. 2001); *see also Lethbridge v. Lula Belle Stewart Ctr.*, No. 06-14335, 2007 WL 2713733, at *5 (E.D. Mich. Sept. 17, 2007) (applying *Watkins* to a foster care setting). Because the determination is individualized, the Court will address each State Defendant separately.

### a. Defendant Kristen Field

Plaintiff claims that Defendant Field was deliberately indifferent "by not advising the foster parent [that Decedent] was non-verbal, autistic, and required constant supervision." ECF 78, PgID 1244. To support the claim, Plaintiff points to a notice of intent to revoke ACF's license. ECF 79-10. But the notice of intent only discussed ACF's failure to provide the proper information to Defendant Richardson. *Id.* at 1412. Defendant Field, however, testified that she provided the placement worker with a form that contained "[i]nformation about the parents, [and] any pertinent information about the child that would be needed to place them in an appropriate home, such as behavior, diagnosis [and] medication." ECF 79-6, PgID 1315. And no evidence disputes that Defendant Field provided the necessary information to the placement worker. *Id*. Thus, it appears Defendant Field provided necessary information.

What is more, Defendant Field testified without dispute that she did not transport Decedent to the foster home, *id.*, and that it was not her job to make

9

inquiries with Defendant Richardson to determine whether she could accept Decedent, *id*. at 1322. Because Defendant Field provided the necessary information to the CPS worker and was not personally involved in taking Decedent to the foster home or discussing with Defendant Richardson about his care, Field was not deliberately indifferent to Decedent's care. The evidence shows that Defendant Field did not know of or disregard any substantial risk to Decedent; therefore, Field did not violate Decedent's due process rights. She is entitled to qualified immunity.

### b. *Defendant Susan Hull (a/k/a Susan Heilner)*

Defendant Hull was the former director of "[c]hildren's [s]ervices for the Oakland County office of the Michigan Department of Health and Human Services" when Decedent was removed from his family home. ECF 73-5, PgID 870. But Defendant Hull was not involved in day-to-day CPS investigations, and she "was not aware of any safety concerns for [] children placed with" ACF. *Id*. at 871. She also affirmed that she was not involved with Decedent's placement, that she knew nothing of Decedent's family or Defendant Richardson, or Defendant Richardson's training to be a foster parent" prior to July 2015. *Id*. And Plaintiff did not dispute any of Defendant Hull's affirmations. Thus, Defendant Hull did not know of or disregard any substantial risk to Decedent, and she is entitled to qualified immunity.

### c. *Defendant Alisia Johnson*

Defendant Johnson was the DHS monitor first assigned to Decedent's case when he was removed from his family home. ECF 80-4, PgID 1659. As a DHS monitor,

10

she supervised ACF to make sure it was "adhering to policies in regard to case management for the children that they were assigned." ECF 80-4, PgID 1669.

Defendants claim that Defendant Johnson is entitled to qualified immunity because she was not deliberately indifferent to Decedent's care; rather, ACF was to monitor Decedent's care. ECF 73, PgID 840. Defendants also argued that Defendant Johnson was "unaware of any potential harm posed to [Decedent], and, in fact, was informed that [Decedent] was doing well in" Defendant Richardson's home. *Id*. at 841.

But Defendant Johnson admitted that she knew something was not right. She testified that, as of May 5, 2015, ACF never provided her with an initial service plan for Decedent's case, even though it should have been submitted in March 2015. ECF 80-4, PgID 1674. It also appears that ACF never provided Defendant Johnson with any documentation of a family team meeting or a face-to-face visit with Decedent. *Id*. And Defendant Johnson knew it would be a legal and regulatory violation if there was no family team meeting or face-to-face visit. *Id*. at 1676.

Defendant Johnson was also aware that Decedent had wandered away from Defendant Richardson's home in the past and that he needed increased monitoring. *Id*. at 1677. And Defendant Johnson herself admitted that it was "unusual" to not receive an initial service plan for Decedent and that "out of all of the cases" she was assigned to Decedent's case had the worst documentation. *Id*. at 1678, 1691.

Last, Defendant Johnson admits that she had minimal knowledge of the case. She also admitted that she did not take any actions even though ACF did not provide the necessary paperwork for her to monitor the case. It is therefore clear that

11

Defendant Johnson "'subjectively' ignored the" child's "safety need," and the Court will proceed below to the objective component surrounding her qualified immunity. *Clark-Murphy*, 439 F.3d at 286.

### d. Defendant Ebony Jeffries

Defendant Jeffries was the DHS Monitor who took over Decedent's case from Defendant Johnson on June 22, 2015—less than two weeks before Decedent's death. ECF 81, PgID 1698. Defendant Jeffries stated that she did not "have anything that presented a concern" about Decedent's actual quality of care when she first took over the file and that she did not have much time to review the file. *Id.* at 1707. She also testified that she never met Decedent and that she never went to Defendant Richardson's home. *Id.* at 1706. But she did admit that she "had some concerns" about Decedent's general case and the state of the file. *Id.* at 1704. To address the concerns, Defendant Jeffries reached out to ACF about the missing information and tried to fix the file. *Id.* at 1710. In the few days that Defendant Jeffries was assigned to Decedent's case, she tried to work the file back in order, but she had minimal knowledge about Decedent or Defendant Richardson's foster home. *Id.* at 1706. Based on the limited timeframe and effort put forth by Defendant Jeffries, the Court finds she did not subjectively ignore Decedent's safety need. *Clark-Murphy*, 439 F.3d at 286. Rather, Defendant Jeffries saw the issue and tried to fix it in the limited time she had before Decedent's death. The Court will therefore grant qualified immunity in her favor.

12

>  *ii.   Licensing Defendants*

Next, Plaintiff claims that Defendants Perry, Rehagan, Tansil, Tribble, and Wiggins (the "Licensing Defendants") violated Decedent's constitutional rights because they knew that ACF violated several foster care rules but continued to allow children to be placed with the service. ECF 22, PgID 299. For a deliberate indifference claim, however, Plaintiff must prove "that the defendant knew of and disregarded a substantial risk of serious harm to [the children's] health and safety." *Watkins v. City of Battle Creek*, 273 F.3d 682, 685–86 (6th Cir. 2001); *see also Lethbridge*, 2007 WL 2713733, at *5 (applying *Watkins* to a foster care setting).

Here, Defendants Wiggins, Tansil, and Tribble all affirmed that they were unaware of any safety concerns for children in ACF's care, and that they did not know of Decedent or Defendant Richardson before Decedent's death. ECF 73-4, PgID 865–66, ECF 73-2, PgID 857, ECF 73-3, PgID 861. Defendant Perry also testified that she did not recall ever hearing Defendant Richardson's name before Decedent's death, that she did not believe ACF's license should have been revoked, and that she believed that it was not necessarily the fault of the agencies if a child died in the agencies' care. ECF 73-6, PgID 891, 897–98.

Defendant Rehagen further testified that she did not know of Defendant Richardson before Decedent's death, and that she believed Defendant Richardson had a "regular foster license," which meant that Richardson was "not under any type of disciplinary action." ECF 73-7, PgID 913, 914. The Licensing Defendants therefore all affirmed that they did not know about any issues with either ACF or Defendant

13

Richardson that would show "a substantial risk of serious harm" to Decedent. *Watkins*, 273 F.3d at 685–86. And Defendant Perry testified that while ACF was cited for violations, most of the issues with the entity related to paperwork and that there were plans in place to correct those issues. ECF 73-6, PgID 893–94, 896. Thus, Defendants argue that the Licensing Defendants did not know of any substantial risk to Decedent, so they were not deliberately indifferent.

In response, Plaintiff generically argues that ACF repeatedly violated DHS rules but the state continued to license it. ECF 78, PgID 1219–20. In the allegations, Plaintiff cites an investigation of ACF that took place after Decedent's death. *Id.* at 1220. Although Plaintiff did not cite a source for his allegations, it appears that he is citing ECF 78-10, a notice of intent to revoke ACF's license. But Plaintiff admits that the notice of intent was not created until after Decedent's death. ECF 78, PgID 1220. And thus there is no evidence that any of the Licensing Defendants "knew of and disregarded a substantial risk of serious harm to [Decedent's] health and safety." *Watkins*, 273 F.3d at 686. The Court therefore cannot find that the Licensing Defendants subjectively ignored Decedent's safety, and because the Licensing Defendants did not violate Decedent's constitutional rights they are entitled to qualified immunity. Summary judgment will therefore be granted in favor of the Licensing Defendants.

### b. *Objective Component*

The Court must now determine whether Plaintiff satisfied the objective component of the deliberate indifference analysis as to the only surviving claim, the

claim against Defendant Johnson. Under the objective component, Plaintiff must show that Decedent "faced a substantial risk of serious harm." *Villegas v. Metropolitan Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013). Defendants argue that Plaintiff cannot satisfy the objective component because Decedent was well-cared for in Defendant Richardson's custody and that his placement did not create a serious risk of harm. *See* ECF 73, PgID 835–37; ECF 82, PgID 2043–45.

But Defendant Richardson testified that she had told Defendant Johnson that she was "unable to provide the heightened care and supervision that [Decedent] required." ECF 79-8, PgID 1341. Defendant Richardson later testified that she had a phone call with Defendant Johnson and had told her that she "was unable to provide the heightened care" necessary for Decedent. *Id*. Thus, Decedent was placed with a foster parent who openly admitted that she was unable to care for the child—an act that may have put him at risk. The Court therefore cannot say that Decedent did not face a risk of substantial harm. As a result, the Court finds that there is not clear evidence to show that Defendant Johnson was not deliberately indifferent to Decedent. Thus, Defendant Johnson will only be entitled to qualified immunity if the Court finds the constitutional right in question was not clearly established.

2. *Clearly Established Constitutional Right*

The Court must determine whether Decedent's due process right "was clearly established such 'that a reasonable official would understand that what [s]he was doing violate[d] that right.'" *Mullins*, 805 F.3d at 765 (citing *Saucier,* 533 U.S. at 201– 02). "A plaintiff can meet his burden under this prong by presenting caselaw 'with a

15

fact pattern similar enough to have given fair and clear warning to the officers about what the law requires.'" *Vanderhoef v. Dixon*, 938 F.3d 271, 278 (6th Cir. 2019) (quoting *Hopper v. Plummer*, 887 F.3d 744, 755 (6th Cir. 2018)). Although the case a plaintiff cites "need not be on all fours with the instant fact pattern" the question at issue "must be so settled that 'every reasonable official would have underst[ood] that what he [was] doing violate[d] [the] right' at issue." *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

Plaintiff points out that thirty years ago, the Sixth Circuit held "that due process extends the right to be free from the infliction of unnecessary harm to children in state-regulated foster homes." *Meador*, 902 F.2d at 476. Thus "it is clearly established law in the Sixth Circuit that a child has a due process right to be free from harm while in a state foster home." *Moore*, 364 F. App'x at 196. The Court cannot say that Defendant Johnson did not violate Decedent's clearly established constitutional rights. *See Jones*, 959 F.3d 748 ("[C]ourts should not grant summary judgment on the issue of qualified immunity if there exists a genuine issue of material fact, involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights."). And for the same reason stated above, the Court cannot grant Defendant Johnson summary judgment on Plaintiff's constitutional claims.

## CONCLUSION AND CASE MANAGEMENT

For the reasons stated above, Defendant Field is entitled to absolute immunity for any statements made or actions taken during the removal proceedings.

Defendants Field, Hull, Jeffries, Perry, Rehagan, Tansil, Tribble, and Wiggins are entitled to qualified immunity because they did not violate Decedent's constitutional rights. But Defendant Johnson is not entitled to qualified immunity at the summary judgment phase and the case against her must proceed.

Because discovery has closed and the Court has now ruled on the pending dispositive motion, and due to the ongoing delay in all jury trials in the Eastern District of Michigan because of COVID-19, *see* 20-AO-059, the Court will refer the case to mediation with Mr. Patrick Seyferth. The mediation must occur before March 1, 2021. Last, to expedite the resolution of the case, if mediation fails, the parties must submit a joint status report and inform the Court if they will consent to a bench trial to take place over Zoom in March 2021.

## ORDER

**WHEREFORE** it is hereby **ORDERED** that State Defendants' motion for summary judgment [73] is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that Defendant Field is **ENTITLED** to absolute immunity for any statements made or actions taken during the removal proceedings.

**IT IS FURTHER ORDERED** that Defendants Field, Hull, Jeffries, Perry, Rehagan, Tansil, Tribble, and Wiggins are **ENTITLED** to qualified immunity.

**IT IS FURTHER ORDERED** that State Defendants' motion [73] is **DENIED** as it relates to the claim against Defendant Johnson.

17

**IT IS FURTHER ORDERED** that the Court **REFERS** the case to Mr. Patrick Seyferth[1] for mediation and settlement discussions and **ORDERS** the parties to proceed in compliance with Local Rule 16.4. The mediation and settlement discussions shall occur no later than **March 1, 2021**. The parties shall contact Mr. Seyferth and provide him with a copy of this order as soon as practicable and shall **NOTIFY** the Court of the date of the mediation session once it is scheduled.

**IT IS FURTHER ORDERED** that Mr. Seyferth shall **NOTIFY** the Court within seven days of completion of the mediation, stating only the "date of completion, who participated, whether settlement was reached, and whether further [alternative dispute resolution] proceedings are contemplated." E.D. Mich. L.R. 16.4(e)(6). If a settlement is reached, the parties shall **NOTIFY** the Court immediately upon completion of the mediation and shall **SUBMIT** a proposed order of dismissal within 21 days. *Id.* at 16.4(e)(7). If a settlement is not reached, the parties shall **NOTIFY** the Court within seven days of the completion of the mediation.

---

[1] Patrick Seyferth is a private attorney and founding member of the firm Bush Seyferth, PLLC. He can be reached at (248) 822-7802 and at Seyferth@bsplaw.com.

**IT IS FURTHER ORDERED** that if the parties are unable to resolve the case with Mr. Seyferth's assistance, they shall **SUBMIT** a joint status report, no later than seven days after the mediation, informing the Court if they will consent to a bench trial.

**SO ORDERED**.

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: February 11, 2021

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 11, 2021, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager